**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**THOMAS J. STEWART,**

      **Plaintiff,**

**vs.**                             **Case No.  5:07cv175-SPM/WCS**

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. LOC. R. 72.2(D).  It is recommended that the decision of the Commissioner be reversed and Plaintiff's application be granted.

**Procedural status of the case**

Plaintiff, Thomas J. Stewart, applied for supplemental security income benefits. Plaintiff was 47 years old at the time of the administrative hearing.  The Administrative Law Judge found that Plaintiff has the equivalent of only a 3rd grade education, is functionally illiterate, and has no past relevant work.  Plaintiff alleges disability due to

lower back pain.  The Administrative Law Judge found that Plaintiff had the residual functional capacity to do a limited range of medium work.  Relying upon a vocational expert, the ALJ found that Plaintiff could perform work as an industrial cleaner, kitchen helper, bus person, cafeteria attendant, and linen supply load builder, and thus was not disabled as defined by Social Security law.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial deference to the Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed

all evidence and has sufficiently explained the weight he has given to obviously
probative exhibits, to say that his decision is supported by substantial evidence
approaches an abdication of the court's 'duty to scrutinize the record as a whole to
determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662
F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the
claimant is not only unable to do past relevant work, "but cannot, considering his age,
education, and work experience, engage in any other kind of substantial gainful work
which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A disability is an
"inability to engage in any substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected to result in death or
which has lasted or can be expected to last for a continuous period of not less than 12
months . . . ." 42 U.S.C. § 423(d)(1)(A). Both the "impairment" and the "inability" must
be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 122
S.CT. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)-(f):

1.   Is the individual currently engaged in substantial gainful activity?

2.   Does the individual have any severe impairments?

3.   Does the individual have any severe impairments that meet or
     equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.   Does the individual have any impairments which prevent past
     relevant work?

5.   Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of

the application for benefits.  A positive finding at step three results in approval of the

application for benefits.  At step four, the claimant bears the burden of establishing a

severe impairment that precludes the performance of past relevant work.  If the claimant

carries this burden, the burden shifts to the Commissioner at step five to establish that

despite the claimant's impairments, the claimant is able to perform other work in the

national economy.  <u>Chester</u>, 792 F.2d at 131; <u>MacGregor v. Bowen</u>, 786 F.2d 1050,

1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove

that he or she cannot perform the work suggested by the Commissioner.  <u>Hale v.</u>

<u>Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Evidence from the Administrative Hearing**[1]

Plaintiff testified that he cannot read or write.  R. 268.  He has a valid motor

vehicle driver's license.  *Id.*  He last worked as a mechanic at Lander's Auto Sales in

2004.  *Id.*  He was released from that work due to back pain.  R. 282.  He said his

employer gave him work as a stock clerk, but he could not perform adequately because

the job required that he be able to read part numbers and stock numbers.  *Id.*  Plaintiff

admitted that he did not have much of a prior work history, and said it was due to his

---

[1] Descriptions of the purpose and effects of prescribed drugs are from PHYSICIANS' DESK REFERENCE, as available to the court on Westlaw, or PDRhealth™, PHYSICIANS DESKTOP REFERENCE, found at http://www.pdrhealth.com/drugs/drugs-index.aspx. Information about medical terms and prescription drugs come from DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, available at:  http://www.mercksource.com (Medical Dictionary link).  Social Security Rulings can be found at: http://www.ssa.gov/OP_Home/rulings/rulfind1.html.

limited education.  R. 268.  He had no earnings between 1989 to 1997, and only $1,000 in earnings in 1998 and 2000.  R. 269.

Plaintiff testified that he had a steady throbbing pain in his back.  R. 270.  He had been treated by Dr. Clemmons since 2004, seeing him about every month and receiving pain medications.  R. 271-272.  He said that the medication does not "kill the pain," however.  R. 272.  It does help some.  R. 273.  He said his treating physician had never recommended any physical therapy.  R. 281.  Plaintiff said he used a heating pad and hot baths for back pain.  R. 279.  An MRI was performed in April, 2004, and surgery was recommended, but Plaintiff did not have the surgery because he did not "have the means."  R. 283.

Plaintiff said that moving and sitting made his back pain worse.  R. 274.  Sitting for just a few minutes makes the pain worse.  *Id.*  He said he could stand only four or five minutes before wobbling and getting dizzy.  *Id.*  Plaintiff said he could not lift and carry very much weight.  R. 275.

Plaintiff denied doing much in the way of household chores, stating that he does "pick up behind myself."  R. 277.  He said he spends four or five hours a day watching television.  *Id.*  He watches the Discovery channel, sports, movies, and cartoons, and is able to follow programs that interest him.  R. 277-278.  He is able to fix a sandwich.  R. 278.  He does not do his own laundry or any yardwork.  *Id.*  Plaintiff said he could drive and that he drove to the hearing, a trip of about one and one-half hours each way.  R. 278-279.

The ALJ assumed that Plaintiff was functionally illiterate, could do no jobs requiring reading or writing, and could do only unskilled jobs, but had no mental

limitations.  R. 287-288.  He also assumed that Plaintiff could occasionally lift and carry

up to 50 pounds for one-third of the work day, and 25 pounds or less frequently, that is,

for the remaining two-thirds of a work day.[2]  R. 287.  He assumed that Plaintiff had "no

impediment to his ability to sit, stand or walk."  *Id*.  He assumed that Plaintiff could push

and pull no more than 40 pounds.  *Id*.  He assumed that Plaintiff could climb

occasionally and frequently balance, kneel, crouch, crawl and stoop, and had no

limitations on his ability to reach, handle, hold, finger, grasp and manipulate objects

within the above weight limits.  *Id*.  The vocational expert said that such a person could

do work as an industrial cleaner, kitchen helper, cafeteria attendant, or linen supply load

builder.  R. 288-290.

**Medical Evidence**

The medical record in this case begins on March 25, 2004, with a visit to James

A. Clemmons, M.D.  R. 188.  Plaintiff was to see Dr. Clemmons on multiple occasions

after this first visit, primarily to obtain pain medication.  Dr. Clemmons noted that Plaintiff

had LBP (low back pain) and "nerves."  *Id*.  Diazepam[3] and hydrocodone[4] were

---

[2] 20 C.F.R. § 404.1567(c) provides:  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 416.967(c) is identical.

[3] Valium (diazepam) is a benzodiazepene derivative prescribed for the management of anxiety disorder and the short-term relief of the symptoms of anxiety.  It is also prescribed as adjunct relief for  skeletal muscle spasm.  PHYSICIANS' DESK REFERENCE (2004), p. 2988.

[4] Hydrocodone is a semisynthetic narcotic derivative of codeine having sedative and analgesic effects more powerful than those of codeine.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

prescribed.  *Id.*  X-ray images of Plaintiff's lower back on April 4, 2004, revealed disc

space narrowing at L5-S1 "associated with sclerosis, hypertrophic changes, and

vacuum disc formation."  R. 190.  The opinion was "[s]evere and chronic disc

deterioration at L5-S1."  *Id.*  A copy of the report was sent to Dr. Clemmons.  *Id.*  Dr.

Clemmons renewed Plaintiff's medications on April 7, 2004.  R. 187.

From May 1, 2004, to April 4, 2006, Plaintiff was seen by Dr. Clemmons and

numerous pain medications were continuously prescribed over this period.  R. 181-186,

206-208, 217-230, 242-244, 259, 262.  At various times, Dr. Clemmons prescribed

trazodone,[5] hydrocodone, diazepam, lorazepam,[6] promethazine,[7] and imitrex.[8]  *Id.*

On May 1, 2004, Dr. Clemmons noted that Plaintiff had a painful gait.  R. 186.

On June 1, 2004, Dr. Clemmons said that Plaintiff was "painful, really can't work

naturally."  R. 185.  He found that Plaintiff's back was "tender."  *Id.*  He said that the x-

---

[5] Trazodone hydrochloride, sold as Desyrel, is an antidepressant.  PDRhealth™, PHYSICIANS DESKTOP REFERENCE.

[6] Lorazepam, marketed as Ativan, is benzodiazepine with antianxiety, sedative, and and anticonvulsant effects.  PHYSICIANS' DESK REFERENCE (2003).

[7] Promethazine hydrochloride is a phenothiazine derivative having marked antihistaminic activity as well as sedative and antiemetic actions; used to provide bedtime, surgical, and obstetrical sedation, to potentiate the action of central depressants, to treat allergic conditions including rhinitis, conjunctivitis, and pruritic skin disorders, to manage nausea, vomiting, and vertigo associated with surgery, pregnancy, and motion sickness, and as an ingredient in cough and cold preparations; administered orally, rectally, intramuscularly, and intravenously.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

[8] Imitrex is used for the acute treatment of migraine headaches.  PHYSICIANS' DESK REFERENCE (2004), p. 1529.

rays supported his diagnosis of low back pain.  *Id*.  On June 28, 2004, Plaintiff told Dr.

Clemmons that the pain medications "just 'cut the edge off.' " R. 184.

On July 26, 2004, Dr. Clemmons noted that Plaintiff had a part-time job.  R. 183.

Tenderness was found at L1-L2.  *Id*.  On August 23, 2004, Dr. Clemmons again found

low back pain supported by "films."  *Id*.  Plaintiff reported to Dr. Clemmons on

September 26, 2004, that he had the worst month for pain.  R. 181.  Again, Dr.

Clemmons found that Plaintiff had lower back pain supported by objective studies.  *Id*.

On October 11, 2004, Plaintiff returned to Dr. Clemmons complaining that his back pain

was worse.  R. 208.

On October 25, 2004, Plaintiff was examined on a consultative basis by Sam R.

Banner, M.D.  R. 192.  He told Dr. Banner that he had had low back pain for many

years, with increasing symptoms over the last several months.  *Id*.  He reported difficulty

walking, standing, or sitting for prolonged periods.  *Id*.  He said that he had restless

nights and fatigue during the day, and inability to complete most daily routine activities

without help from his wife.  *Id*.  Plaintiff reported that after the April, 2004, MRI, surgery

was recommended but he had no insurance for surgery or treatment.  *Id*.

On examination, Dr. Banner determined that Plaintiff had no paravertebral spasm

and the range of motion of his back was 45 degrees forward bending, 15 degrees

backward bending, and 20 degrees lateral flexion and rotation bilaterally.  R. 194.

Plaintiff had stiffness getting on and off the table, could squat halfway, and his gait was

with slow, short steps.  *Id*.  He had 4/5 strength in his lower extremities, muscle tone

was normal, and there was no atrophy.  R. 195.  Dr. Banner noted:  "Sitting and supine

leg raising caused low back pain bilaterally with [the] right being worse."  *Id*.  Dr.

Banner's diagnosis in part was chronic low back pain by history and a question mark for IQ level, and he said that Plaintiff would "need continued medical and orthopedic care." *Id.*

Plaintiff returned again to Dr. Clemmons on November 15, 2004, and his medications were continued.  R. 207.  Treatment notes for December 13, 2004, and January 10, 2005, are much the same with reports of increased pain.  R. 206, 230.  The pain was reported as "severe" on February 7, 2005.  R. 229.  On March 7, 2005, Plaintiff reported that he could not sit or stand for very long, and said he worked some the prior week and was worse.  R. 228.  The same medications were continued, with an increase of hydrocodone.  *Id.*  Plaintiff was seen again on April 4, 2005.  R. 227.

On May 2, 2005, Plaintiff complained of pain from his spine into his neck.  R. 226.  Dr. Clemmons found his lower spine painful to touch, and noted a painful slow gait, with obvious distress.  *Id.*  "Nerves" was noted as a diagnosis.  *Id.*  On May 31, 2005, Plaintiff returned and received medications.  R. 225.  "Slow painful stooped gait" was noted by Dr. Clemmons.  *Id.*

On June 27, 2005, Plaintiff was seen again by Dr. Clemmons.  R. 225.  He was very tender to palpation over the lower spine region.  *Id.*  He returned on July 25, 2005.  R. 223.  Dr. Clemmons said that Plaintiff could not balance well and could hardly walk. *Id.*  Increased lower back pain was the diagnosis.  *Id.*  On August 22, 2005, Dr. Clemmons found that Plaintiff was still trying to work on his job, but had a slow gait "in great pain."  R. 222.

On September 14, 2005, Dr. Clemmons said that Plaintiff was trying to work, but had spasmodic pain outbreaks.  R. 221.  Plaintiff reported migraine headaches, nausea,

and vomiting on October 17, 2005, and still had a stooped, painful gait.  R. 220.  On November 14, 2005, Plaintiff said he could not do much of anything due to pain.  R. 219.

On December 11, 2005, Dr. Clemmons noted that Plaintiff had no money, no insurance, and needed orthopedic care.  R. 218.  He said that Plaintiff cannot get it, and now was "horribly crippled" and "stooped."  *Id*.  Dr. Clemmons said that Plaintiff was "fully disabled."  *Id*.  He said that Plaintiff stayed at home, and his wife had to do everything, including activities of daily living.  *Id*.  Dr. Clemmons found that Plaintiff had "terrific" L5-S1 deterioration, pain, and probable spinal stenosis.[9]  *Id*.

On January 9, 2006, Dr. Clemmons again treated Plaintiff.  R. 217.  Dr. Clemmons noted: "Ridiculous.  No one will help him; can't get [disability].  Pathetic level of pain & disability."  *Id*.  He noted that Plaintiff had a family in another state that was trying to get him to move "from here."  *Id*.

In the February, 2006, visit to Dr. Clemmons, Dr. Clemmons noted that Plaintiff's pain "never goes away."  R. 244.  His diagnosis was probable spinal stenosis with pain.  *Id*.  As with all of the other visits, Dr. Clemmons continued to prescribe pain medications.  *Id*.  On March 7, 2006, Dr. Clemmons noted that Plaintiff "sits in chair perched on front edge in [obvious appearance] of pain."  R. 243.  On April 4, 2006, Dr. Clemmons noted "worsening pain."  R. 242.  Dr. Clemmons said: "His case is in front of a judge now to get some relief & perhaps [a surgical] consult."  *Id*.  Increased lower

---

[9] Stenosis is an abnormal narrowing of a duct or canal.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

back pain was the diagnosis.  *Id.*  Five tablets daily of hydrocodone were again

prescribed.  *Id.*

On June 5, 2006, Plaintiff was tested for basic educational skills.  R. 171.  He

tested at 1.7 grade equivalent for reading, 2.5 grade equivalent for mathematics

comprehension, and 1.6 for math application.  *Id.*  His language and spelling skills were

at the kindergarten level.  *Id.*

Plaintiff was examined on a consultative basis on August 4, 2006, by C. W.

Koulisis, M.D.  R. 245-247.  Dr. Koulisis reviewed "the chart" "in detail," and the report

from Dr. Banner.  *Id.*  Plaintiff reported back pain radiating to the buttocks bilaterally and

occasionally to his left leg.  *Id.*  He said that he had had pain since 1983.  *Id.*  Dr.

Koulisis noted an MRI in April, 2004, showing "deterioration of the L5-S1 segment.

Recommendation was made for surgery."  *Id.*  Plaintiff's medications at that time were

hydrocodone and lorazepam.  *Id.*

Dr. Koulisis performed a physical examination.  He noted that Plaintiff arose

"without difficulty and upon standing has normal cervical lordosis, thoracic kyphosis,

lumbar lordosis."  R. 246.  He observed that Plaintiff had "normal gait."  *Id.*  A Spurling's

test[10] of Plaintiff's cervical spine was negative, there was no muscle spasm, and

strength and sensation were intact.  *Id.*  More relevant to Plaintiff's claims, Dr. Koulisis

found that Plaintiff had no muscle spasm of the thoracolumbar spine, his motor strength,

---

[10] This test is used for evaluation of cervical spine radiculopathy.  The patient
laterally bends the neck to each side while maintaining a posture of cervical extension.
Pain intensified with ipsilateral bending strongly suggests a diagnosis of radiculopathy.
Pain with contralateral bending suggests musculo-ligamentous origin.  UNIVERSITY OF
FLORIDA, COLLEGE OF MEDICINE, available at:
http://www.med.ufl.edu/rheum/rheumTests.htm

reflexes, and sensations were intact, and he found "[n]egative tension signs sitting and lying bilaterally." *Id.* He also found "[n]egative provocative testing confined to the sacroiliac joints bilaterally." *Id.* Plaintiff had smooth and symmetric range of motion of his hips. *Id.* Dr. Koulisis reviewed x-rays of Plaintiff's spine and found moderately severe degeneration of Plaintiff's lumbosacral disc. *Id.* His "impression" was degenerative lumbar disc disease, L5-S1. R. 247. He said:

> Mr. Stewart has low back pain with radiation, however objectively he maintains range of motion, is neurologically intact. Also objectively, however, he has marked degenerative disease L5-S1.

*Id.* He recommended "an MRI of the lumbar spine with referral to a spine surgeon." *Id.*

Dr. Koulisis filled out a questionnaire "Medical Assessment of Ability to Do Work Related Activities (Physical)," and said his assessment only took into account Plaintiff's "musculoskeletal system." R. 247. On that form, Dr. Koulisis said he thought that Plaintiff could occasionally carry 50 pounds, frequently could carry 25 pounds, and had no limitations for standing and walking. R. 251. He also said that Plaintiff had no limitations for sitting. R. 252.

On about April 5, 2006, as shown by the FAX date printed at the top, Dr. Clemmons wrote a memorandum stating that Plaintiff "has severe back pain that needs evaluation with MRI and orthopedic consultation." R. 262.

On February 5, 2007, Dr. Clemmons filled out a disability evaluation letter. R. 259. He said that Plaintiff would be disabled indefinitely, and would never return to work. *Id.*

**Legal Analysis**

**Whether the Administrative Law Judge should have ordered intelligence testing**

Plaintiff contends that the ALJ erred by not obtaining further evidence concerning limitations posed by Plaintiff's intelligence level and anxiety.  Plaintiff argues that the ALJ should have obtained such evidence to determine whether Plaintiff's mental deficiencies and impairments meet or equal Listing 12.05C.  Plaintiff testified to difficulties he had in school, and the ALJ found that he was functionally illiterate.  Vocational testing resulted in 1.7 grade equivalent for reading, 2.5 grade equivalent for mathematics comprehension, 1.6 for math application, and kindergarten level for language and spelling skills.  Dr. Banner noted that impairment caused by Plaintiff's intelligence level was questionable.  Plaintiff points out that in addition to questions of intelligence, Dr. Clemmons found several times that Plaintiff suffered from "nerves," which must mean anxiety as that diagnosis is commonly used, and he continuously prescribed several psychotropic medications, including diazepam, trazodone, and lorazepam, medications that are used to treat anxiety and depression.

"Social Security proceedings are inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ."  Sims v. Apfel,  530 U.S. 103, 110-111, 120 S.CT. 2080, 2085, 147 L.Ed.2d 80 (2000), citing Richardson v. Perales, 402 U.S. 389, 400-401, 91 S.CT. 1420, 28 L.Ed.2d 842 (1971).  "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record."  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997), *citing*, Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).  This basic duty exists whether or not the claimant is represented.

Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995) (citation omitted).  Additional

evidence, however, is not necessary if the record contains sufficient evidence to make a

decision.  Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999).

"The Secretary has broad latitude in ordering a consultative examination."  Diaz

v. Secretary of Health and Human Services, 898 F.2d 774, 778 (10th Cir. 1990); Reed

v. Massanari, 270 F.3d 838, 842 (9th Cir.  2001) (citing Diaz).  Thus, there is "no

absolute duty under 42 U.S.C. § 421(h) for the Secretary or the ALJ to have a

psychologist or psychiatrist complete the medical portion of the case review and the

residual functional capacity assessment."  Andrade v. Secretary of Health and Human

Services, 985 F.2d 1045, 1050 (10th Cir. 1993) (citing Bernal v. Bowen, 851 F.2d 297,

302 (10th Cir. 1988)).

In McCall v. Bowen, 846 F.2d 1317 (11th Cir. 1988), the Eleventh Circuit held

that 42 U.S.C. § 421(h), enacted in 1984, "appears to require a consultative

examination on less evidence than may have been required previously."  846 F.2d at

1320.  That statute provides:

> (h) Evaluation of mental impairments by qualified medical professionals
>
> An initial determination under subsection (a), (c), (g), or (i) of this section
> that an individual is not under a disability, in any case where there is
> evidence which indicates the existence of a mental impairment, shall be
> made only if the Commissioner of Social Security has made every
> reasonable effort to ensure that a qualified psychiatrist or psychologist has
> completed the medical portion of the case review and any applicable
> residual functional capacity assessment.

42 U.S.C. § 421(h).

In McCall, the court noted that:

> plaintiff's physicians have at times suggested that she might be suffering
> from a psychological condition. They have informed her that she suffered
> from "anxiety and nerves and a lot of stress," they have commented that
> she was "somewhat apprehensive," and they have prescribed Valium for
> her anxiety.

*Id.*  The court remanded for other reasons, but asked the Commissioner to carefully

consider the applicability of § 421(h).  *Id.*

In Sneed v. Barnhart, 214 Fed.Appx. 883 (11th Cir. Dec 22, 2006) (not selected

for publication in the Federal Reporter, No. 06-12693), the only evidence of a mental

impairment before the ALJ was the following:

> Specifically, Sneed testified that she was tearful and that she was on
> Zoloft, which is an antidepressant.  Medical records indicate that she was
> also on Xanax, which treats anxiety, and that she had a "fair prognosis"
> from her diagnosis of depression.

*Id.*, at 886.  The Eleventh Circuit said that "[t]hese brief references to depression, which

was apparently being treated with medication, were insufficient to trigger the ALJ's duty

to obtain a psychological consultative report."  *Id.*  While this is not binding precedent, it

is persuasive authority from our circuit.

In Andrade, there was evidence that the claimant had been provided intense

psychotherapy for four months before the hearing, and his treating physician expressed

the opinion that he was disabled due to mental impairment.  *Id.*, at 1048.  The court

concluded that the ALJ erred by not obtaining a consultative mental health evaluation.

*Id.*, at 1050.  Similarly, in Hill v. Sullivan, 924 F.2d 972 (10th Cir. 1991), a psychiatrist

had found that the claimant had chronic fatigue that was "more likely" "chronic mental

depression."  *Id.*, at 974.  A witness for the claimant had testified that she was tired all

the time and fell asleep frequently.  *Id*.  The court held that the ALJ erred by not

obtaining a consultative mental health evaluation.  *Id.*, at 975.

If this were a case simply of evidence of anxiety and depression, then Sneed

would provide the persuasive method of analysis.  Anxiety that may be treated

occasionally with medication, without more, ought not be a significant factor in

determination an ability to do a particular job.  But in this case, Plaintiff received

psychotropic medications for an extended period of time.  There is also evidence of very

limited educational skills, perhaps the result of low intellectual ability.   The combination

of very limited educational skills, low intellectual ability, anxiety, and possible depression

gives rise to more significant concerns.  The case should be remanded to obtain a

mental health consultative assessment and intelligence testing.  However, if the court

adopts the recommendation which follows, this will not be necessary.

> **Whether the ALJ's determination of Plaintiff's residual functional capacity is supported by substantial evidence**

The ALJ's determination of Plaintiff's residual functional capacity should have

involved an evaluation of the opinion of a treating physician, Dr. Clemmons, and an

evaluation of the credibility of Plaintiff's description of his limitations.  Both are governed

by legal principles that are well-established in this circuit.

The Administrative Law Judge did not mention the opinions expressed by Dr.

Clemmons.  He discussed in detail only the one-time consultative examinations by Drs.

Banner and Koulisis.  R. 14-15.  This alleged error was noted by Plaintiff in his

memorandum, doc. 15, p. 16, but Defendant did not respond to the argument.  Doc. 18.

Instead, Defendant treated this case as almost entirely depending upon the ALJ's

assessment of Plaintiff's credibility and the alleged need for a mental health examination.  Doc. 18, pp. 4-8, 8-9.

The opinion of a claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  This is so because treating physicians:

> are likely to be the medical professionals most able to provide *a detailed, longitudinal picture* of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2) (emphasis added).[11]

Generally, a treating physician's medical opinion is entitled to greater weight than the opinion of a consulting physician.  Wilson v. Heckler, 734 F.2d 513, 516 (11th Cir. 1984).  A consultative examination, that is, a one-time examination by a physician who is not a treating physician, need not be given deference by the Commissioner.[12] McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987).

---

[11] Important to the determination of whether there is a "detailed, longitudinal picture" of impairments is the length of the treatment relationship, the frequency of examination, the extent of the knowledge of the treating source as shown by the extent of examinations and testing, the evidence and explanation presented by the treating source to support his or her opinion, the consistency of the opinion with the record as a whole, and whether the treating source is a specialist with respect to the particular medical issues.  20 C.F.R. § 404.1527(d)(2)-(5).

[12] The Seventh Circuit has held that a residual functional capacity assessment by a consulting physician, in an appropriate case, can be substantial evidence to support a hypothetical to a vocational expert.  Johansen v. Barnhart, 314 F.3d 283, 288 (7th Cir. 2002).  There is contrary authority, however.  Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir.1998) ("opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence.").

The reasons for giving little weight to the opinion of a treating physician must be supported by substantial evidence.  Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).  This circuit finds good cause to afford less weight to the opinion of a treating physician "when the: (1) treating physician's opinion is not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Phillips v. Barnhart, 357 F.3d 1232, 1240-1241(11th Cir. 2004); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991) ("The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.").  *See also*, Crawford v. Commissioner Of Social Security, 363 F.3d 1155, 1159 (11th Cir. 2004) (finding good reasons articulated by the ALJ to discount the treating physician's opinion).

The ALJ must clearly articulate the reasons for rejecting the treating physician's opinion.  Phillips v. Barnhart, 357 F.3d at 1241.

> The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error. . . .  *Where the Secretary has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true.*

MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986) (emphasis added).

In this case, the opinions of Dr. Clemmons, while very short, are fully bolstered by a lengthy treatment history.  While Dr. Clemmons was a family practice physician and did not perform orthopedic testing, he repeatedly examined Plaintiff and found him to be significantly stooped and unable to walk without pain.  Dr. Clemmons fully credited Plaintiff's reports of pain and, as a consequence he prescribed strong pain medications

for more than two years.[13]  Further, the MRI of Plaintiff's spine which Dr. Clemmons

referenced and relied upon, showed significant deterioration at L5-S1, and Dr.

Clemmons said several times that Plaintiff needed orthopedic treatment.  Plaintiff was

unable to obtain orthopedic treatment and the surgery that was recommended for lack

of health insurance and money to pay for the procedure.   All of this is substantial

evidence in the record to give substantial weight to the opinion of Dr. Clemmons as to

Plaintiff's impairment.

        As will be explained ahead, that Plaintiff never had back surgery, and simply

relied upon pain medications as his primary mode of treatment, is not, on this record,

substantial evidence to fail to give substantial weight to the opinion of Dr. Clemmons.

Plaintiff apparently did not have money or insurance to obtain more extensive health

care.

        In summary, since the ALJ failed to give any reasons to discount the opinions of

Dr. Clemmons, the treating physician, it was error to rely instead upon the reports of the

consultants, Drs. Banner and Koulisis.  As a consequence, this Court must accept as

true the opinion of Dr. Clemmons.  This finding has a significant bearing upon the

Court's review of the ALJ's credibility findings.

        The rules governing assessment of a claimant's credibility are also well-

established.  Pain and other symptoms reasonably attributed to a medically

_____

        [13] Plaintiff did not testify that his pain medications made him "feel crazy" as found by
the Administrative Law Judge, which implies that the pain medications did not have
therapeutic effect.  R. 14.  Plaintiff was asked: "Does the medicine seem to help?"  R.
272.  He responded: "It gets me where I don't go crazy.  But it don't kill the pain.  No, sir,
it don't."  *Id.*

determinable impairment are relevant evidence for determining residual functional

capacity.  Social Security Ruling 96-8p, p. 4.  Pain and other symptoms may affect

either exertional or non-exertional capacity, or both.  *Id.*, p. 6.

> In order to establish a disability based on testimony of pain and other
> symptoms, the claimant must satisfy two parts of a three-part test
> showing:  (1) evidence of an underlying medical condition; and (2) either
> (a) objective medical evidence confirming the severity of the alleged pain;
> or (b) that the objectively determined medical condition can reasonably be
> expected to give rise to the claimed pain.  *See Holt v. Sullivan*, 921 F.2d
> 1221, 1223 (11th Cir. 1991).  If the ALJ discredits subjective testimony, he
> must articulate explicit and adequate reasons for doing so.  *See Hale v.
> Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  Failure to articulate the
> reasons for discrediting subjective testimony requires, as a matter of law,
> that the testimony be accepted as true.  *See Cannon v. Bowen*, 858 F.2d
> 1541, 1545 (11th Cir. 1988).

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).  The reasons articulated for

disregarding the claimant's subjective pain testimony must be based upon substantial

evidence.  Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532

(11th Cir. 1991).  It is not necessary that the ALJ expressly identify this circuit's pain

standard if his findings "leave no doubt as to the appropriate result" under the law.

Landry v. Heckler, 782 F.2d 1551, 1553-1554 (11th Cir. 1986).

"A claimant's subjective testimony supported by medical evidence that satisfies

the pain standards is itself sufficient to support a finding of disability.  Indeed, in certain

situations, pain alone can be disabling, even when its existence is unsupported by

objective evidence."  Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (citations

omitted).  "[W]here proof of a disability is based upon subjective evidence and a

credibility determination is, therefore, a critical factor in the Secretary's decision, the ALJ

must either explicitly discredit such testimony or the implication must be so clear as to

amount to a specific credibility finding." *Id.* at 1562, *quoting*, <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1255 (11th Cir. 1983).

Defendant argues that the ALJ's rejection of Plaintiff's description of his limitations is supported by the following substantial evidence.  First, Defendant argues that while Plaintiff said he could sit for only a few minutes, he admitted he watched television for four or five hours a day and admitted that he recently drove one and one-half hours without stopping.  Doc. 18, p. 5.  Plaintiff did not testify that he could sit for only a few minutes.  He said: "If I sit too long it'll make it worse."  R. 274.  He said that sitting for "just a few minutes" would make the pain worse.  *Id.*  Plaintiff did not say he could not sit for longer than a few minutes.  But more important, this is not a sitting case.  The ALJ found that Plaintiff has the residual functional capacity to stand and walk in a job, frequently carrying up to 25 pounds and occasionally carrying 50 pounds. Even if there were a significant inconsistency in Plaintiff's testimony, an ability to sit for 5 hours is not evidence of an ability to stand and walk for 8 hours frequently carrying 25 pounds.

Defendant argues that Plaintiff's testimony should be discounted because he was on probation for sale and possession of marijuana.  Doc. 18, p. 5.  Conviction of a felony may be evidence of a lack of credibility.  But the fact that Plaintiff was serving a probationary term for a drug offense would seem to have little a bearing upon whether Plaintiff's description of his symptoms should be believed.

Plaintiff's lack of significant work history is important evidence to consider in determining the credibility of his pain testimony.  It is unknown, however, to what extent that work history was affected by his lack of educational skills.  In the absence of

intelligence testing, reliance upon Plaintiff's work history to disbelieve his pain testimony is misplaced.

There is evidence that Plaintiff engaged in some other activities of daily living in this record, and this evidence is also relied upon by Defendant to discount Plaintiff's pain testimony.  Doc. 18, p. 5.  Plaintiff indicated in his application on October 28, 2004, that he can prepare meals in a microwave oven, do small loads of laundry, shop if accompanied by another person, and drive but must stop when he has a leg spasm.  R. 128-129.  But Plaintiff's complete description of his daily activities falls short of substantial evidence to disbelieve his pain testimony.  Plaintiff said that he had learned to use the microwave because it "is quick and easy" and he cannot stand for long periods of time; he sometimes needs help bathing and dressing due to pain; he has to get someone else to do dishes, vacuuming, sweeping, cleaning the tub, and cleaning the toilet; he has learned to do smaller loads of laundry that are not so heavy; he has to have someone help him shop; he cannot get a full night's sleep; he sometimes has to stop when he drives to stop a leg spasm; "it takes a lot" to get yardwork done, and he gets help; he does not socialize much "because it just is not worth all the pain it causes;" it hurts too bad to help take care of his grandson; and someone else has to do home maintenance for him.  R. 128-129.

There is some inconsistent evidence concerning Plaintiff's activities of daily living, however.  In October and November, 2004, the case agent spoke with Plaintiff's girlfriend.  She said that he was able to drive, go to the store and to his mother's house, cook things in the microwave, do laundry, cut the grass, shower and wash his hair daily, get her daughter ready for school, take her to school, and watch his grandson for a few

hours.  R. 130-131.  On another day, the agent said that the girlfriend reported that Plaintiff was not home because her washing machine had broken and he had gone to Lowes.  R. 130.

These inconsistencies are not insignificant.  Nonetheless, even if true, these activities of daily living are not substantial evidence in the record to conclude, as the ALJ did, that Plaintiff can stand and walk all day, frequently carrying 25 pounds. Activities of daily living are often not substantial evidence in the record to discount a claimant's testimony, and the ALJ should proceed with caution in relying upon them to discredit a claimant.  Ross v. Apfel, 218 F.3d 844, 849 (8th Cir. 2000) ("The ability to perform sporadic light activities does not mean that the claimant is able to perform full time competitive work."); Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (the court must consider the entire record when determining whether the evidence of a claimant's daily activities is substantial evidence for the conclusion that she retains the residual functional capacity to work); Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997) ("Nor do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability or is inconsistent with the limitations recommended by Lewis's treating physicians."); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (when considering daily activities, the entire record must be considered, including the claimant's testimony that she had to lie down after two hours of such work); Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (a conclusory citation to a claimant's "daily activities" as a basis for failing to believe her testimony as to pain was insufficient where there was a medical condition that reasonably could have

given rise to the pain described, and, although she testified that she cooked and shopped for herself, she had trouble putting on her clothing).

Defendant also argues Plaintiff should be discredited because he "only took medication, used a heating pad, and took hot baths, but did not pursue extensive medical or other treatment for pain." Doc. 18, p. 6. Yet the record does show that Plaintiff was repeatedly examined and treated by Dr. Clemmons, and he continuously took strong pain medications prescribed by Dr. Clemmons. This is not a record that supports a conclusion that Plaintiff's medical treatment was not extensive.

Further, surgery was recommended but the record shows without contradiction that Plaintiff could not afford to have surgery or orthopedic treatment. Moreover, there is no evidence that Plaintiff's impairment would have been improved with surgery. "The regulations provide that refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability. *See* 20 C.F.R. § 416.930(b). 'A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.' " Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988), *quoting* Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987). However, "[i]n order to deny benefits on the ground of failure to follow prescribed treatment, the ALJ must find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored." *Id.*

> Additionally, when an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment.

Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003).

> We agree with every circuit that has considered the issue that poverty excuses noncompliance. *See, e.g., Lovelace*, 813 F.2d at 59 ("To a poor person, a medicine that he cannot afford to buy does not exist"); *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (failure to follow prescribed treatment does not preclude reaching the conclusion that a claimant is disabled when the failure is justified by lack of funds); *Dover v. Bowen*, 784 F.2d 335, 337 (8th Cir. 1986) ("the ALJ must consider a claimant's allegation that he has not sought treatment or used medications because of lack of finances"); *Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir. 1985) (inability to afford surgery does not constitute an unjustified refusal and does not preclude recovery of disability benefits).  Thus while a remediable or controllable medical condition is generally not disabling, when a "claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir.1986) (footnote omitted).

<u>Dawkins v. Bowen</u>, 848 F.2d at 1213.  Thus, Plaintiff's treatment history, as shown in this record, is not substantial evidence to discount his testimony.

Defendant admits that "a lumbar MRI taken on April 4, 2004, confirms the presence of severe and chronic disc deterioration at L5-S1," but argues that findings by the two consultative physicians undercut Plaintiff's pain testimony.  Dr. Banner's objective findings were not entirely supportive of a determination that Plaintiff has the residual functional capacity to do work requiring medium levels of exertion.  Dr. Banner found that the range of motion of Plaintiff's back was only 45 degrees forward bending.  Plaintiff had stiffness getting on and off the table, and his gait was with slow, short steps, just as Dr. Clemmons had repeatedly noted.  Dr. Banner found that Plaintiff had low back pain with sitting and supine leg raising.  Dr. Banner's diagnosis in part was chronic low back pain by history and a question mark for IQ level, and he said that Plaintiff would "need continued medical and orthopedic care."

Likewise, the findings of Dr. Koulisis do not clearly support an ability to do medium work on a full-time basis.  Dr. Koulisis determined that Plaintiff has low back pain with radiation, with "marked degenerative disease L5-S1."  He, like Dr. Banner, saw the need for orthopedic care.  He recommended "an MRI of the lumbar spine with referral to a spine surgeon."  *Id.*

As noted above, the pain credibility issue depends upon whether there is "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  Wilson v. Barnhart, 284 F.3d at 1225.  Here, there is evidence of an underlying medical condition, objectively determined, that "can reasonably be expected to give rise to the claimed pain."  Moreover, while the consultative findings, standing alone, could be evidence that Plaintiff's spinal deterioration does not necessarily impair his ability to do medium work on a sustained basis, the importance of those findings cannot be elevated above the opinion of Dr. Clemmons, who examined and treated Plaintiff for more than two years.

**Conclusion**

In summary, the opinion of Dr. Clemmons must be accepted by this Court as true since no reasons were given to not give his opinion substantial weight.  Additionally, since the reasons for discounting Plaintiff's testimony are not supported by substantial evidence in the record, Plaintiff's testimony must also be accepted as true.  The Court should reverse the decision of the Commissioner and order that Plaintiff's application for

benefits be granted.  Consequently, there is no need to remand for a mental health examination and intelligence testing.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **REVERSED** and the Commissioner **ORDERED** to grant Plaintiff's application for supplemental security income benefits.

**IN CHAMBERS** at Tallahassee, Florida, on February 19, 2008.


**s/     William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**